UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                             Case No. 6:10-cr-38-Orl-22DAB

JEFFREY P. PAINE

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorney, files its sentencing memorandum in this case, and requests the Court to impose a sentence at the low end of the Sentencing Guidelines ("guidelines") range as set forth in the Presentence Report (PSR) prepared by the United States Probation Office. A guidelines sentence in this case will achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a) because it will reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect children from further crimes of the defendant.

### BACKGROUND

In early July 2009, Jeffrey Paine, using the screen name ILove0408, came to the attention of an FBI law enforcement officer who was conducting a child pornography investigation using Gigatribe, a file sharing program. Doc. 22, ¶ B(9) at p. 16. The FBI agent, who had taken over the screen name "Diablo1," queried his network of friends, and found that "Diablo1's" friend, "ILove0408," was logged onto the network. Id. On his welcome screen, Paine advertised the availability of his child pornography collection for download. Specifically, he displayed the following message:

> **_HELLO!_**
>
> I love to chat, so if you're in the mood send me a message!
> Also, feel free to recommend me to other users. The more the merrier!
>
> Everything I have is downloaded from Gigatribe, so keep checking back for new stuff!
>
> Files I have downloaded but not yet looked at will be in the ilove0408 folder. Videos I like will be moved to the Video archive folder. I will never delete any videos from the Video archive folder so feel free to download from there!

Id. When the agent browsed Paine's shared folders, he found two folders titled ilove0408 and Video archive with numerous sub folders. The agent downloaded 40 pictures of child pornography from Paine. Id., at p. 17. Among other depravities, the agents downloaded pictures showing: a naked prepubescent boy with his legs spread and his wrists bound to his ankles with a blue strap; an adult male ejaculating onto a naked baby's stomach; and a naked prepubescent boy with a cord wrapped around his genitals. Id., PSR at ¶ 8.

Approximately six weeks later, law enforcement agents obtained and executed a search warrant at Paine's home, and seized his laptop computer. Id., PSR at ¶ 10. When they entered Paine's home at about 7:00 a.m., they found his laptop computer on and downloading child pornography from Gigatribe. Later, agents examined Paine's laptop computer and found over 11,000 pictures and hundreds of videos depicting the sexual torture, abuse and exploitation of children, including prepubescent girls and boys and infants. PSR at ¶ 12. In his Video archive folder, the folder where Paine declared he stored the videos he liked, agents located hundreds of videos showing the sexual abuse and anal rape of mostly very young boys. Among the files in that folder were

2

videos titled: "6 yo rape and scream;" and, "5 yo boy f***** from beneath by big cock man - pthc."

Paine cooperated with law enforcement and agreed to an interview. He admitted that he had been using the file sharing program for the past 8 months to trade child pornography. He stated that he used Gigatribe to "take and give files to other people." A student at a local computer college, Paine stated that he installed a program called Parallels on his Apple laptop which created a virtual hard drive on the computer. Doc. 22, ¶ B(9) at p. 17-18. He then installed the Windows operating system on the virtual hard drive to run Gigatribe. Id., at p. 18. Furthermore, Paine stated that he obtained the premium version of Gigatribe for free by using a program called "crack." He said that the premium version of Gigatribe enabled him to download files from multiple sources which increased the speed of the downloading process. PSR at ¶ 10. He also admitted that he had a huge number of images and videos of child pornography on his computer and that he stored videos in a shared folder entitled "video archive." Id.

Agents also recovered from Paine's computer chat conversations that he had with another user on Gigatribe. During this conversation, Paine engaged in sadistic sexual discussion about having sex with a younger brother, admitted that he was a pedophile, distributed files with names indicative of child pornography to the user, received several pictures of the user's minor younger brother, and asked the user to obain a picture of the brother's genitals for him.

Paine pled guilty to one count of distribution of child pornography. He faces a statutory sentence of a mandatory minimum of five years imprisonment and a maximum of 20 years. Pursuant to the PSR, the defendant's guidelines range is 210 to 262

3

months in federal prison. For the reasons set forth below, the United States requests a sentence of imprisonment at the low end of the guidelines followed by a term of supervised release of life.

## ARGUMENT

### I. Guidelines Objections

#### 1. Distribution Adjustment

Paine objects to the 5-level enhancement for distribution for the expectation of receipt of a thing of value. Section 2G2.2(b)(3)(B) of the guidelines directs district courts to increase a defendant's base offense level by five levels if the offense involved "distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." USSG §2G2.2(b)(3)(B). The commentary to this provision provides:

> 'Distribution for receipt, or expectation of receipt, of a thing of value, but nor for pecuniary gain' means any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit. 'Thing of value' means anything of valuable consideration. For example, in a case involving the bartering of child pornographic material, the 'thing of value' is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received.

USSG §2G2.2, comment. (n.1).

In this case, the facts establish that Paine traded child pornography with other computer users on a private, invite only, network with the expectation that he would receive child pornography from his "friends" on this network. His files were only available to those individuals whom he accepted into his network, and he could only obtain files from those individuals who accepted him into their network. Paine chose the child pornography that he wanted to trade, and the users with whom he wanted to

4

trade. Paine's purpose for using the file-sharing program was to receive child pornography from others, and in order to do that, he had to have child pornography files to share. Otherwise, no one would accept him into their network and allow access to their files of child pornography. That his trading of images was not on a quid pro quo basis does not preclude application of the enhancement. United States v. Griffin, 482 F.3d 1008, 1013 (8th Cir. 2007) (court held that §2G2.2(b)(2)(B)'s five-level enhancement for the distribution of child pornography "applies to a defendant who downloads and shares child pornography files via an internet peer-to-peer file-sharing network, as these networks exist- as the name "file-sharing" suggests - for users to share, swap, barter, or trade files between one another."); United States v. Brown, 333 F.3d 850 (7th Cir. 2003) (court held that trading of images, though not on a 1:1 basis or for pecuniary gain qualified as distribution and warranted 5 level increase under earlier version of guideline adjustment for distribution). See also United States v. Geiner, 498 F.3d 1104, 1109-1113 (10th Cir. 2007) (although disagreeing with Griffin that file-sharing automatically rendered 5-level enhancement applicable, court upheld application of enhancement where defendant expected to receive faster downloads by file-sharing and noted that defendant may have an expectation for the receipt of a thing of value in the absence of an agreement with another person).

Not only did Paine use a private, invite only file-sharing program to distribute and receive child pornography, but he also admitted to the agents that he used Gigatribe to "take and give files to other people." On his welcome page, he encouraged users to recommend him to other Gigatribe users with whom to share child pornography, proclaiming "the more the merrier," and after stating that he downloaded everything

from other users on Gigatribe, encouraged users in his network to "keep checking back for new stuff." Paine's statements to the agents and on his welcome page establish that he distributed child pornography to users on Gigatribe with the expectation that he would receive child pornography from users on Gigatribe. Accordingly, the Probation Officer properly scored this enhancement.

    2.    <u>Double-Counting</u>

Paine also objects to the two-level enhancement because the offense involved the use of a computer. Pursuant to §2G2.2(b)(6) of the guidelines, district courts must increase a defendant's base offense level by 2 levels if the "offense involved the use of a computer or an interactive computer service for the "possession ... or distribution of the material ...." Paine does not contest that he used a computer to distribute child pornography, but instead argues that the application of this enhancement results in double-counting because every child pornography offense involves a computer. See <u>United States v. Tenuto</u>, 593 F.3d 695, 696 (7th Cir. 2010)(double-counting occurs when a district court uses conduct that was an element of the offense to enhance the defendant's guidelines range). Paine is mistaken. The use of a computer is not an element of the crime of conviction, i.e. distribution of child pornography, and thus the enhancement does not amount to double-counting. <u>United States v. Lewis</u>, 605 F.3d 395, 403-404 (6th Cir. 2010).

Paine pled guilty to violating 18 U.S.C. § 2252A(a)(2)(B), which criminalizes the distribution of child pornography using the United States mail, or using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, including by computer. 18 U.S.C. § 2252A(a)(2)(B). Thus, using a

6

computer is not an element of the crime; rather, interstate commerce is an element of the crime, and Paine could have violated the statute without using a computer, such as distributing through the United States mail or across state lines. Moreover, "[d]istributing child pornography through computers is particularly harmful because it can reach an almost limitless audience. Because of its wide dissemination and instantaneous transmission, computer-assisted trafficking is also more difficult for law enforcement officials to investigate and prosecute." United States v. Lebovitz, 401 F.3d 1263, 1271 (11th Cir. 2005)(quoting H.R.Rep. No. 104-90, at 3-4 (1995), as reprinted in 1995 U.S.C.C.A.N. 759, 760-61). Thus, the enhancement for use of a computer aims at punishing a distinct harm beyond the mere distribution of child pornography, and application of this enhancement does not result in double-counting. Tenuto, 593 F.3d at 698-99.

## II. Section 3553(a) Factors

### 1. The Nature and Seriousness of the Offense

The nature of Paine's offense is serious and deeply disturbing. A substantial sentence is warranted to adequately punish Paine for his crime and to protect children from his future conduct. See 18 U.S.C. § 3553(a)(1).

"Child sex crimes are among the most egregious and despicable of societal and criminal offenses." United States v. Sarras, 575 F.3d 1191, 1220 (11th Cir. 2009)(court affirmed as reasonable a 100-year- sentence for a first offender who sexually abused a 13-year-old girl and took photos of it). The distribution of child pornography feeds an industry that causes untold physiological, emotional, and mental trauma to the child victims. Osborne v. Ohio, 495 U.S. 103, 109 (1990). Deterrence is "particularly

compelling in the child pornography context" because the greater demand for it, the more children will be victimized to create it. See Pugh, 515 F.3d at 1194-95 (quoted). "Congress repeatedly has stressed the terrible harm child pornography inflicts on its victims," and has repeatedly increased the penalties for child pornography offenses. Pugh, 515 F.3d at 1195-98 (citing legislative history of federal statutes criminalizing child pornography offense).

Paine distributed and/or possessed more than 10,000 images and 100 videos, among which are images of several children whose identity is known to the National Center for Missing and Exploited Children. These victims suffer real and everlasting damage from the distribution of their sexual abuse images. Each time child pornography is reproduced, downloaded, or viewed, the victimization of the minor appearing in the pornography is perpetuated. The offenders who access images of children being sexually abused enhance the demand for such items, thereby perpetuating the cycle of sexual abuse and victimization. As described by a mother of one of the victims of Paine's offense in a statement submitted to the court and defense counsel:

> From 2002-2003, my daughter was abused repeatedly to produce images for the purpose of being traded/shared over the internet. Without a market to receive and trade those images, without the encouragement of those who wanted to acquire the images, I truly believe this abuse would not have occurred.
>
> All those who trade these images and thereby create the demand for lurid and violent depictions of children are participants in the exploitation of my daughter. Each traded picture that placed a value on inventiveness, novelty, or cruelty played a role in egging on the abuser to even more vile acts.

8

> The pictures of my daughter were 'made for trade' - her
> abuser adapted to serve his market - whatever his audience
> was looking to acquire, that's what happened to her.
> Torture, degradation, pain & suffering - whatever was being
> traded for and downloaded directly influenced what
> happened to her - and what is still happening to other
> children like her.

Congress and the courts have recognized that Paine's crime is serious, and in his particular case, he compounded the seriousness by not only possessing the images, thereby fueling the demand for such material, but also distributing images, thereby contributing to the repeated victimization of these children. A guidelines sentence adequately reflects the seriousness of Paine's offense, and there is nothing about the seriousness of the offense which warrants a variance. 18 U.S.C. § 3553(a)(2).

### 2. The History and Characteristics of the Defendant

Similarly, Paine's history and characteristics militate in favor of a guidelines sentence. 18 U.S.C. § 3553(a)(1). Paine's conduct and statements clearly establish that he has a sexual preference for young boys and he has admitted that he is a pedophile. Like a baseball fan who seeks out and collects baseball trading cards, Paine collected pictures depicting a subject matter that interested him; pictures and videos showing the sexual abuse and exploitation of children. Paine's urges were so overwhelming that he used a premium version of the file-sharing program to obtain quicker downloads of child pornography images and videos, and was downloading at 7:00 a.m. when agents executed the search warrant. In addition, Paine chatted about his sexual preference for young boys, sought out others who shared his same

dangerous sexual preferences, and traded horrific images depicting the sexual abuse of children.

Paine requests a downward variance of approximately 66%, from 210 months to 72 months, because, among other reasons, he has Asperger's disorder. That Paine has Asperger's disorder; however, does not militate in favor of a major downward variance. See United States v. Irey, 612 F.3d 1160, 1196 (11th Cir. 2010)("Although there is no proportionality principle in sentencing, a major variance does require a more significant justification than a minor one - the requirement is that the justification be 'sufficiently compelling to support the degree of the variance.'), citing Gall v. United States, 552 U.S. 38, 50 (2007).

Asperger's disorder is an autism spectrum disorder but not autism itself. Doc. 30, Ex. H. This disorder is life long and continuous, and is marked by difficulty with social interactions, but not severe communication problems as with autism. Id. Although Paine has Asperger's, he graduated from high school, attended college, lived on his own, and has a superior intellect, including above average language functions. Indeed, after examining Paine, a clinical psychologist found conflicting indicators of Asperger's in Paine, and concluded, "while somewhat inconsistent, assessment results indicate the presence of mild Asperger's Disorder in an intellectually gifted young man," and that, "[Paine] was more empathic and compassionate than is typical in Asperger's." Doc. 30, Ex. F. And, despite two years of treatment for his Asperger's, Paine distributed child pornography, and sought out others on the internet who shared his same sexual interests. His conduct was purposeful, planned and goal-directed, as

evidenced by his organization of his child pornography collection into folders that he viewed, liked and saved.

Moreover, as a policy matter, the guidelines limit the permissible grounds for downward departures in cases of sexual abuse of children, specifically disallowing departures based on diminished capacity under USSG § 5K2.13. United States v. Mark, 425 F.3d 505, 507 (8th Cir. 2005). While this restriction is no longer binding, the Court may still consider the Commission's policy statements as a factor weighing against a reduced sentence. Indeed, courts of appeals in several circuits, including the Eleventh Circuit, have affirmed guidelines sentences in child pornography cases in which the defendant had Asperger's disorder. United States v. Mandli, 278 Fed. Appx. 955, 2008 WL 2123510 (11th Cir. 2008)(per curiam)(unpublished)(defendant had Asperger's, and argued he posed no risk of recidivism and was likely to become a victim in prison); United States v. Jones, 563 F.3d 725 (8th Cir. 2009)(defendant had Asperger's, was the victim of abuse and suffered from degenerative arthritis).

Finally, Paine speculates that his Asperger's disorder, age, sexual preference, and physical stature will render him vulnerable to victimization or abuse in prison and requests a variance on this basis as well. Paine offers no case authority showing that a person similarly-situated to himself cannot be adequately cared for in prison.

According to the Federal Bureau of Prisons Program Statement on Sexually Abusive Behavior Prevention, all inmates are reviewed and screened upon their arrival, and those inmates who appear vulnerable may be placed in protected status, and/or provided treatment and support services designed to protect them. U.S. Department of Justice Federal Bureau of Prisons Program Statement Sexually Abusive Behavior

Prevention, P5324.06, www.bop.gov/policy/progstat/5324_006. Sex offenders may be transferred to the Sex Offender Management Program offered at six different facilities. Moreover, Asperger's is not an uncommon diagnosis among prisoners and this diagnosis wold not preclude him from receiving treatment. Accordingly, Paine's physical characteristics and sexual preference are not a reason to vary from the guidelines.

    3.    <u>Just Punishment, Adequate Deterrence and Protection of the Public</u>

A guidelines sentence also meets the sentencing goals of just punishment, deterrence and protection of the public in this case. Deterrence is "one of the four purposes of sentencing identified by Congress in Section 3553(a)." Pugh, 515 F.3d at 1194 (citing S. Rep. No. 98-225, at 75-76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259). And, as noted above, the Eleventh Circuit has recognized that deterrence is "particularly compelling in the child pornography context." Paine has demonstrated that he is a danger to children. He is a pedophile and collected and distribute horrific images of young children over a significant period of time.

Paine seeks a variance based on his purported lack of history of any sexual contact with children as an adult. The absence of a prior conviction for sexual abuse of a child is not a mitigating factor, particularly where it is widely understood that sex offenses are often undetected by the criminal justice system, and sex offenders notoriously minimize their history. Indeed, the Eleventh Circuit has recognized that "child sex offenders have appalling rates of recidivism and their crimes are under-reported." Pugh, 515 F.3d at 1201 (citing United States v. Allison, 447 F.3d 402, 405-06 (5th Cir. 2006)). Likewise, Congress has explicitly recognized the high rate of

recidivism in convicted sex offenders, especially child sex offenders. See Allison, 447 F.3d at 405-06.

Similarly, the defendant's implicit argument that distribution of child pornography is a lesser crime than the more direct forms of sexual abuse is irrelevant to the Court's assessment of the seriousness of defendant's current crime and the need for the sentence to deter defendant and others from committing the same. Cf. United States v. Goff, 501 F.3d 250, 259 (3d Cir. 2007) (noting that the defendant's lack of a propensity to molest children "is, in one sense, irrelevant" to the District Court's assessment of the seriousness of the crime of possessing child pornography).

There is no doubt that Paine needs treatment. Paine's diagnosis of Pedophilia and conduct confirms that he has a persistent sexual interest in prepubescent boys. Treatment of Pedophilia is difficult at best, and will be complicated by his Asperger's condition. A sentence within the guidelines range will assure a lengthy separation from children and child pornography. It will give Paine an opportunity for reflection and treatment in a structured setting, separated from the internet, and from young children. See United States v. Rearden, 349 F.3d 608, 621 (9th Cir. 2003) (citing the "strong link between child pornography and the internet, and the need to protect the public, particularly children, from sex offenders.").

    4.    <u>A Guidelines Sentence Reflects Pertinent Guidelines Policy Statements</u>

A guidelines sentence also reflects the pertinent policy statements in the guidelines and the Sentencing Commission's intent that sex crimes under Chapter 110 be treated differently than other types of crimes. 18 U.S.C. § 3553(a)(5). For example, departures from the voluntary guidelines in a child sex case (including distribution of

13

child pornography, a violation under Chapter 110), are governed by USSG §5K2.0(b). That section provides, referring to 18 U.S.C. § 3553(b)(2)(A)(ii), that the sentencing court may only impose a sentence below the range established by the applicable guidelines if the court finds that there exists a mitigating circumstance of a kind, or to a degree, that (1) has been affirmatively and specifically identified as a permissible ground for a downward departure in the guidelines or policy statements contained therein; (2) has not adequately been taken into consideration by the Sentencing Commission in formulating the guidelines; and (3) should result in a sentence different from that described. The provision then states:

> The grounds enumerated in this Part K of Chapter Five are the sole grounds that have been affirmatively and specifically identified as a permissible ground of downward departure in these sentencing guidelines and policy statements. Thus, notwithstanding any other reference to authority to depart downward elsewhere in this Sentencing Manual, a ground of downward departure has not been affirmatively and specifically identified as a permissible ground of downward departure within the meaning of section 3553(b)(2) unless it is expressly enumerated in this Part K as a ground upon which a downward departure may be granted.

The commentary to §5K2.0, n.4(B)(i), states that the standard for a downward departure in child crimes and sexual offenses differs from the standard from other departures. Thus, the basis for such a downward departure should be affirmatively and specifically identified as a ground for departure under Chapter 5, Part K.

The United States recognizes that section 3553(b)(2)(ii) is no longer mandatory in light of the holding of the United States Supreme Court in United States v. Booker, 543 U.S. 220 (2005). However, this Court should give great weight to the findings of Congress in this regard, indicating that departures should be extremely rare in child sex crime cases. Indeed, the Sentencing Commission has made it clear that child sex

14

crimes under Chapter 110 are to be treated differently and more severely than other types of crimes. The guidelines limit the permissible grounds for downward departures in cases of sexual abuse of children, specifically disallowing departures based on diminished capacity, (§ 5K2.13), aberrant behavior (§ 5K2.20) and family ties and responsibilities (§ 5H1.6). Furthermore, the guidelines provide that generally an offender's age and health are not relevant, except in rare cases where the offender is so elderly and infirm that home confinement would be an effective alternative to prison. Id. §§ 5H1.1, 5H1.4. The guidelines also provide at a defendant's mental and emotional condition generally are not appropriate grounds for departure. Id. §§ 5H1.1, 5H1.3.

5.  The Sentencing Guidelines are Reasonable

The defendant urges this Court to disregard the guidelines in fashioning his sentence. The defendant posits that §2G2.2, the guideline used to calculate his offense level, is somehow flawed because it was allegedly not based on empirical data and was instead based on congressional action.

The United States Court of Appeals for the Eleventh Circuit, however, has repeatedly rejected any Kimbrough-type challenge to §2G2.2, where defendants argue that the courts should give less deference to this child pornography guideline provision because it is not based on empirical data. See United States v. Pugh, 515 F.3d 1179, 1201, n.15 (11th Cir. 2008) (§2G2.2 does "not exhibit the deficiencies the Supreme Court identified in Kimbrough," where the court held that the crack cocaine guidelines did not take account of empirical data and national experience.); see also United States v. Centella, No. 08-15016, 322 Fed. Appx. 748, 751, 2009 WL 903436 at *2 (11th Cir.

15

Apr. 6, 2009) (unpublished) ("Centella argues that his sentence should have been lower because USSG §2G2.2, the guideline used to calculate his offense level, was not based on empirical data or developed in an informed manner. This Court already has rejected a Kimbrough-type challenge to §2G2.2 ... Thus, Centella's argument is foreclosed by our precedent."); United States v. Lynch, No. 08-14922, 2009 WL 2852616 at *1, n.3 (11th Cir. Sept. 8, 2009) (unpublished); United States v. Clawson, 303 Fed.Appx. 861, 863, 2008 WL 5265049 at *2 (11th Cir. Dec. 19, 2008) (unpublished) ("Defining and fixing penalties for federal crimes are Congressional, not judicial, functions ... We decline to hold ... that §2G2.2 is flawed ....").

Section 2G2.2 of the guidelines deserves respectful consideration under 18 U.S.C. § 3553 because, contrary to the defendant's claim, it was developed as a product of the U.S. Sentencing Commission's ("Commission") evaluation of past sentencing practices, as "modif[ied] and adjust[ed] . . .in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like." Rita v. United States, 551 U.S. 338, 349 (2007). According to the United States Sentencing Commission's recent report, The History of the Child Pornography Guidelines:

> [t]he Commission has sought to implement congressional intent in the area of child pornography offenses in a manner consistent with the [Sentencing Reform Act] and subsequent legislation. . . in amending the child pornography guidelines over the years, the Commission has reviewed sentencing data, considered public comment on proposed amendments, conducted public hearings on proposed amendments, studied relevant literature, and considered pertinent legislative history.

See The History of the Child Pornography Guidelines, at 7.

16

Moreover, contrary to the defendant's misplaced argument, Congressional involvement in the formation and development of the sentencing guidelines is not only intended but proper. "Notwithstanding the delegation of authority provided to the Commission in the [Sentencing Reform Act] Congress retained ultimate authority over the federal sentencing guidelines." Id. at 5. Congress, indisputably, has the power under Article I, Section 8 of the United States Constitution to set penalties for criminal offenses. As the Supreme Court observed, Congress holds power to "fix the sentence for a federal crime, and the scope of judicial discretion with respect to a sentence is subject to congressional control." Mistretta v. United States, 488 U.S. 361, 363 (1989) (citing United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 94 (1820) (identifying "the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment.").

The mere presence of Congressional involvement in the development of a guideline, therefore, cannot by itself, render that guideline somehow worthy of less weight. After all, it was Congress that in "instructing both the sentencing judge and the Commission what to do, [] referred to the basic sentencing objectives that the statute sets forth in 18 U.S.C. § 3553(a)." Rita, 551 U.S. at 348. Nor is there any evidence that §2G2.2 was premised on a "general revulsion that is associated with child exploitation-related offenses." United States v. Shipley, 560 F.Supp. 2d 739, 744 (S.D. Iowa 2008). To the contrary, as described by the Sentencing Commission in its report, the 30 year legislative history of the child pornography statutes and the formation of §2G2.2 demonstrates that the guideline is the product of thoughtful Commission

17

institutional expertise and Congressional consideration and oversight. As one district judge wrote:

> The Commission...appears to have gone above and beyond to justify its amendments. Far from failing to rely on empirical data and its own expertise, the Commission has conducted formal studies whenever possible and has conducted extensive analyses to fulfill its statutory obligations. Have politicians unduly hampered the Commission's ability to perform its duties? There can be no question that they have interfered. However, at the same time, Congress' actions could be viewed as a necessary response to a crime that was spiraling out of control. As internet access grew across this country, so did the online community of pedophiles that supports the market for child pornography. Rather than remain silent, Congress acted. In turn, the Commission used empirical data and its own expertise to craft the appropriate Guideline amendments.

United States v. Cunningham, 680 F.Supp.2d 844, 851-852 (N.D. Ohio, 2010).

Finally, contrary to the defendant's argument, §2G2.2 differentiates among the culpability of defendants. In considering how to set the child pornography base offense level to comply with statutory mandatory minimums, the Commission considered that those enhancements which would apply in nearly every case,[1] would result in a guideline range for first time offenders far greater than mandatory minimums. Based on this, as well as the Commission's proportionality analysis of the Guideline, it set base offense levels for receipt and distribution well below mandatory minimums, recommending a base offense level of 22 for trafficking (with a two level decrease for receipt).

Further, the §2G2.2 guideline enhancements are in parity with other guideline enhancements. For example, imposing a higher sentence on defendants with larger

---

[1] The Commission determined those to be use of a computer, material involving children under the age of 12, and number of images.

18

collections of contraband is hardly arbitrary and irrational. The drug, explosives, and gun guidelines also provide for higher sentences based on the volume of contraband involved, and the fraud and theft guidelines recommend higher sentences in cases with larger losses. See USSG §§2D1.1 (drugs), 2D1.11 (chemicals), 2K1.3 (explosive material), 2K2.1 (guns and ammunition), 2B1.1 (fraud), 2B2.1 (burglary). The enhancement for sadistic and violent images also echoes enhancements found throughout the guidelines which apply depending upon the severity of the physical injury to the victim. See USSG §§2A2.1 (assault), 2A4.1 (kidnapping). Accordingly, this Court should extend to §2G2.2 the careful consideration the guidelines deserve as part of its analysis under Section 3553. 18 U.S.C. § 3553(a)(4).

For the foregoing reasons, the United States respectfully requests the Court to sentence the defendant to the low end of the guidelines range followed by a life term of supervised release. In light of the serious nature of the offense, the defendant's personal characteristics, and the need for the protection of children, just punishment and deterrence, a low end guidelines sentence is reasonable.

Respectfully submitted,

ROBERT O'NEILL
United States Attorney

By: *s/ Karen L. Gable*
Karen L. Gable
Assistant United States Attorney
AUSA No. 025
501 West Church Street, Suite 300
Orlando, Florida 32805
Telephone: (407) 648-7500
Facsimile: (407) 648-7643
Email: karen.gable@usdoj.gov

19

U.S. V. JEFFREY P. PAINE          CASE NO. 6:10-cr-38-Orl-22DAB

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

James D. Phillips, Jr.

H. Manuel Hernandez

*s/ Karen L. Gable*
Karen L. Gable
Assistant United States Attorney
AUSA No. 025
501 West Church Street, Suite 300
Orlando, Florida 32805
Telephone:  (407) 648-7500
Facsimile:  (407) 648-7643
Email:  karen.gable@usdoj.gov

20